# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| JAMES KIMBLE, § | |
| *Plaintiff,* § | |
| § | Civil Action No. 4:20-cv-560 |
| v. § | Judge Mazzant |
| § | |
| ELDUKL A. NGIRAINGAS, STEVEN § | |
| WAYNE CAMP, and REFRIGERATED § | |
| SPECIALIST, INC., § | |
| *Defendants.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants Steven Wayne Camp and Refrigerated Specialist, Inc.'s Motion to Exclude or Limit Testimony of Plaintiff's Experts (Dkt. #47) and Defendant Eldukl Ngiraingas' Notice of Joinder in Defendants' Motion to Exclude or Limit Expert Testimony (Dkt. #48). Having considered the motions and the relevant pleadings, the Court finds that the motions should be **GRANTED IN PART**.

### BACKGROUND

On July 7, 2020, Plaintiff James Kimble ("Kimble") sued Defendants Eldukl Ngiraingas ("Ngiraingas"), Steven Wayne Camp ("Camp"), and Refrigerated Specialist, Inc.'s ("Refrigerated Specialist") for personal injuries arising out of a car accident that occurred on July 30, 2018 (Dkt. #1 ¶¶7–10). Kimble alleges the collision caused him to suffer back injuries and tinnitus, a condition that results in constant ringing in the ears (Dkt. #15 at p. 2). On February 26, 2021, Kimble designated Dr. David A. West ("West") and Dr. D. Scott Fortune ("Fortune") as his testifying medical experts (Dkt. #47 Ex. 1 at pp. 1, 3). West is anticipated to testify regarding Kimble's diagnosis, past medical treatment, and future treatment related to Kimble's tinnitus (Dkt. #47 Ex. 1 at pp. 1–2). Fortune is one of Kimble's treating doctors (Dkt. #47 Ex. 1 at p. 3).

On July 13, 2021, Camp and Refrigerated Specialist moved to exclude or limit any testimony West or Fortune may give regarding the cause of Kimble's tinnitus (Dkt. #47 at pp. 1–2). On July 14, 2021, Ngiraingas moved to join Camp and Refrigerated Specialist's motion (Dkt. #48). Kimble has not responded.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590-93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove by a preponderance of the evidence that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *See Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the

following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 594.

The *Daubert* factors are not "a definitive checklist or test." *Daubert*, 509 U.S. at 593. As the Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 151. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citation omitted).

Rule 403 dictates that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Furthermore, the Fifth Circuit has consistently held that an expert may not render conclusions of law. *See Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996); *see also Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("an expert may never render conclusions of law."); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("allowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.")

## ANALYSIS

### I.     Dr. West

Defendants argue West's opinions on causation of tinnitus should be excluded because West is not qualified and because West's opinions are not reliable due to an absence of scientific methodology and reliable foundational data (Dkt. #47 at p.3).

Defendants characterize West as an orthopedic surgeon (Dkt. #47 at p. 3). While a true statement, Defendants omitted West's fifteen years on the Medical Impairment Rating Registry[1] and that West was asked to evaluate Kimble for his future impairment (Dkt. #47 Ex. 1-A; 1-B). Nevertheless, the Court agrees West is not qualified to give an opinion on the cause of the tinnitus.

The court must verify that an expert has expertise concerning the actual subject about which they offer opinions. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 719 (Tex. 1998). "Credentials alone are not determinative; the expert must be qualified to give an opinion on a particular subject." *Barnett v. Procom Heating, Inc.*, No. 4:17-CV-380, 2018 WL 1597406 at *1 (N.D. Tex. 2018) (citing *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1112-13 (5th Cir. 1991)). While West is an experienced orthopedic surgeon who is likely qualified to assess Kimble's impairment rating, there is nothing to suggest West has knowledge, experience, or training in tinnitus and its causes.

Therefore, the Court finds West's causation opinion as to tinnitus inadmissible. The Court need not address Defendants' contentions regarding inadmissibility based on methodology and foundation.

---

[1] The Medical Impairment Rating Registry is a Bureau of Workers' Compensation-maintained listing of qualified and approved physicians who are specially trained to conduct impairment rating medical evaluation. DEPARTMENT OF LABOR & WORKFORCE DEVELOPMENT, (Sept. 15, 2021), https://www.tn.gov/workforce/injuries-at-work/bureau-services/bureau-services/medical-programs-redirect/mir-registry.html.

## II.     Dr. Fortune

Defendants argue Fortune's opinions on causation of tinnitus should be excluded because there is no analytical data to support future testimony on causation (Dkt. #47 at p. 5).  Fortune is an Ear Nose and Throat doctor (Dkt. #47 Ex. 1-D).  He received his doctorate in medicine from Vanderbilt University School of Medicine in 1993 and completed his residency in 1999 (Dkt. #47 Ex. 1-D).  Fortune co-authored an article on the evaluation and management of tinnitus.  D. Scott Fortune, David S. Hayes, & Jay W. Hall III, *Tinnitus: Current Evaluation and Management*, *in* 83 MEDICAL CLINICS OF NORTH AMERICA 153 (1999).  Defendants have not challenged Fortune's qualifications as an expert on tinnitus.  However, Defendants argue there is no objective data to support Fortune's anticipated conclusion that the collision caused Kimble's tinnitus (Dkt. #47 at p. 5).  The Court disagrees.

A doctor may use their technical or specialized knowledge to diagnose a patient based on their physical assessment of the patient and based on the patient's reported symptoms before and after the alleged injury causing accident.  *Perez v. Boecken*, No. 19-CV-475, 2020 WL 3074420 at *7 (W.D. Tex. 2020) (citing FED. R. EVID 702(a)(b)).  The Court has no reason to believe Fortune did not, or would not, follow these most basic steps.  While Defendants allege Fortune failed to consider hearing tests performed on Kimble from 2011 and 2012 (Dkt. #47 at p. 5), there is no evidence to support that contention.  Further, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."  *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).  Therefore, the Court finds Fortune's causation opinion admissible under Rule 702 and *Daubert*.

**CONCLUSION**

It is therefore **ORDERED** that Defendants Motion to Exclude or Limit Expert Testimony is hereby **GRANTED IN PART.** Dr. David A. West's opinion on the cause of Plaintiff's tinnitus shall be excluded.

**IT IS SO ORDERED.**
**SIGNED this 7th day of October, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE